UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────────────x
LAURA A. GARCIA,                          :
                                          :
                   Plaintiff,             :
                                          :
         -against-                        :   20-CV-10626 (OTW)
                                          :
COMMISSIONER OF SOCIAL SECURITY,          :   **OPINION & ORDER**
                                          :
                   Defendant.             :
                                          :
──────────────────────────────────────────x

**ONA T. WANG, United States Magistrate Judge:**

I. **INTRODUCTION**

On January 20, 2015, Plaintiff Laura Garcia filed an application under Title II and XVI for disability benefits, and alleged that her disability began July 30, 2014. (Certified Administrative Record "R." 108). The claim was initially denied on March 11, 2015. (R. 119, 132). On August 9, 2017, Plaintiff and vocational expert ("VE") Pat Green testified before Administrative Law Judge ("ALJ") Mark Solomon. (R. 49-76). Following a hearing on August 9, 2017, ALJ Solomon found that Plaintiff was not disabled and therefore not entitled to benefits on September 7, 2017. (R. 15).

Plaintiff filed for review before the Appeals Council, and on November 15, 2018, the Appeals Council vacated the decision and remanded the case for further proceedings. (R. 15). The Appeals Council the directed the Administrative Law Judge to give further consideration to non-treating medical opinions of Dr. M. Kushner and Dr. S. Juriga, offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision. (R. 15). A requisite hearing was held on September 11, 2019,

at which Plaintiff and VE Melissa J. Fass-Karlin testified. (R. 15). On a decision dated November 1, 2019, ALJ Solomon again found Plaintiff was not disabled under the Social Security Act. (R. 15-29). On October 19, 2020, the Appeals Council denied Plaintiff's request for review. (R. 1-8). With this denial, the ALJ's decision is the Commissioner's final decision, reviewable only by this Court. 20 C.F.R. §§ 404.981, 416.1581; 42 U.S.C. § 405(g). Plaintiff then appealed the ALJ's decision to the Southern District of New York, submitting a complaint on December 16, 2020 alleging that the ALJ's decision was "erroneous, not supported by substantial evidence on the record, and/or contrary to the law." (Complaint "Comp.", ECF 1, ¶ 9).

On December 18, 2020, this matter was referred to the undersigned, and on January 18, 2021, all parties consented to this Court conducting all proceedings and ordering the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Consent and Reference "C.R.", ECF 25). The parties submitted a joint stipulation of facts detailing Plaintiff's medical history, the opinion evidence, and the administrative hearing testimony, which I incorporate by reference. (Joint Stipulation, dated March 21, 2022, ECF 31 ("Stip.")).

For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

II. **BACKGROUND**

Plaintiff was born on April 15, 1955, and was 59 years old on the date her application was filed; she is currently 67 years old. (Stip. at 4). Plaintiff has an eighth-grade education level, and her past relevant work experience was on a food production line, excising poultry and

meat. (Stip. at 4). Plaintiff has alleged disability due to depression and anxiety, starting July 30, 2014. (R. 108).

      A.   <u>Plaintiff's Testimony and Physicians</u>

On August 9, 2017, Plaintiff testified that she cleans the house and grooms herself, but does not cook because she forgets to turn off the stove and does not go shopping, and she does not go out alone in general because she gets lost. (R. 60, 64). Plaintiff also testified that she cannot use her left thumb due to a prior work injury, and that she stopped working due to tachycardia brought on by anxiety from her son serving in Afghanistan, which led to chest pain, from which she still suffers. (R. 61-62). Plaintiff stated that her chest pain strikes suddenly and she has to lay down and take medication until she calms down. (R. 63-64). Plaintiff testified to having headaches, which prevent her from standing for very long, and that the heaviest weight she can lift is ten pounds. (R. 64-65).

Plaintiff testified again on September 11, 2019 (R. 77). In response to questions where the ALJ stated that he specifically was, "testing her knowledge and memory" Plaintiff testified that she did not know her zip code, that she did not remember her answers in her previous testimony or her treating physician's name, and that she did not, "remember well" when she was in the Dominican Republic. (R. 84-86). Plaintiff also testified that she does not use the stove for fear of leaving it on, and that she forgets where her clothes are when she gets dressed. (R. 93).

Additionally, Plaintiff testified that she began suffering from depression when her son was deployed to Afghanistan, and again, that she does not leave the house alone because she gets lost. (R. 89-91). She then stated that she cannot use her thumb because she had previously

sliced it at work, and that she hears voices at night that call to her, which is why she suffers from insomnia. (R. 91-92). Dr. Perez, her primary care physician, is who she consults with regularly regarding issues of anxiety and depression. (R. 85, 87, 93-94). Plaintiff also testified that her knees are "worn out" which, along with back trouble, cause her to be unable to stand for more than one hour at a time before she has to sit for about half an hour. (R. 96-100). Further, she has bouts of tachycardia, for which she has twice been hospitalized, and has had headaches which require treatment with medication and taking a break from work until she calms down. (R. 21).

        *i.   Dr. Emilio Perez*

Plaintiff was first treated by Dr. Emilio Perez, her primary care physician ("PCP"), on September 9, 2014. (Stip. at 4). Dr. Perez performed a depression screening and Plaintiff's answers were consistent with severe depression. (R. 505). Dr. Perez then prescribed Plaintiff Paroxetine (Paxil) for major depression and anxiety (R. 507), and then proceeded to increase the dosage on October 7, 2014 (R. 495). On November 5, 2014, Plaintiff saw Dr. Perez to follow up on her depression and Dr. Perez diagnosed her, additionally, with episodic mood disorder and insomnia, and referred her to the psychiatry department. (R. 493). From January of 2015 until May of 2018, Dr. Perez saw Plaintiff at least ten more times, each time continuing treatment for Plaintiff's various mental health conditions including depression, anxiety, and episodic mood disorder. (Stip. at 5-7).

On April 16, 2015, Dr. Perez signed a letter confirming that he regularly treats Plaintiff for severe depression with memory impairment, insomnia, and knee arthritis. (R. 514). Dr. Perez notably prepared two reports on December 19, 2018, and one report on April 17, 2019

regarding Plaintiff's mental and physical impairments. (R. 834-38, 840-46). The reports indicated diagnoses of depression with psychotic features. (R. 830, 834, 841). The reports further assessed that Plaintiff had moderate loss of the ability to remember locations and work-like procedures, understand and remember very short and simple instructions, and carry out very short and simple instructions. (R. 832). Further, the reports showed a marked loss in the ability to understand and remember very short, simple instructions, maintain attention and concentration for extended periods, sustain an ordinary work routine without special supervision, deal with stress or semi-skilled and skilled work, work in coordination with or proximity to others without being unduly distracted, complete a normal workday or work week without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 832). Dr. Perez also assessed that Plaintiff had an extreme loss in the ability to carry out detailed instructions, make simple work-related decisions, maintain socially appropriate behavior, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, use public transportation, set realistic goals, and make plans independently of others. (R. 832).

          *ii.    Dr. Diane D' Allegro*

Plaintiff was evaluated by psychiatrist Dr. Diane D' Allegro at the Riverdale Mental Health Association ("RMHA") on October 24, 2014, after a referral from Dr. Perez. (R. 429-56). After an evaluation, Plaintiff was found to suffer from depressive disorder and limited in abilities in Instrumental Activities of Daily Living, which include using public transportation, managing money, and keeping house. (R. 439-42). Plaintiff was advised by RMHA to attend group therapy and continue her mediation regimen. (R. 442). From December of 2014 until

November of 2015, Dr. D' Allegro saw Plaintiff at least seven more times, with the consistent assessment that, "therapy and medication [are] necessary to control symptoms that interfere in her life," (Stip. 8-11), and suggested increasing Plaintiff's Paxil dosage. (R. 545).

    *iii.*  Dr. Michael Kushner

Plaintiff was given a psychological evaluation by Dr. Michael Kushner on February 18, 2015. (R. 475-60). Dr. Kushner found Plaintiff's remote memory skills, attention, and concentration to be impaired. (R. 458-59). Plaintiff was diagnosed with unspecified depressive and cognitive disorders. (R. 459). Dr. Kushner found Plaintiff to have mild limitations in following and understanding simple directions and instructions, and making appropriate decisions. (R. 459). Plaintiff was also found to have moderate limitations in relating to others and dealing with stress. (R. 459). Plaintiff also underwent a psychiatric evaluation by Dr. Kushner on May 4, 2017. (R. 577-84). At this time, Plaintiff had not been in psychiatric treatment for five months. (R. 578). Plaintiff was diagnosed with depressive and cognitive disorders, and was found to have mild to moderate limitations which were, "caused by cognitive and psychiatric disorders." (R. 580).

    *iv.*  Dr. Ram Ravi

On February 18, 2015, Plaintiff was also evaluated by consultative examiner ("CE") Dr. Ram Ravi. (R. 461-65). Dr. Ravi, whose specialty is internal medicine, found Plaintiff to have moderate limitations in bending, pushing, pulling, lifting, and carrying. (R. 464). Dr. Ravi advised that Plaintiff should avoid squatting and standing and stated that Plaintiff was limited in activities requiring fine manipulation due to knee and thumb pain. (R. 464). On May 4, 2017, Plaintiff saw Dr. Ravi for a consultative orthopedic examination, and was diagnosed with left

thumb pain and bilateral knee pain. (R. 566-76). Dr. Ravi recommended that Plaintiff should avoid squatting, and assessed that Plaintiff could never climb ladders or scaffolds, kneel, crouch, crawl, be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle. (R. 571-74). On March 21, 2019, Dr. Ravi performed another internal medicine examination of Plaintiff. (R. 676-87). Dr. Ravi found that, at work specifically, Plaintiff would have to schedule interruptions due to headaches and would be limited from activities requiring fine visual perception due to decreased bilateral vision. (R. 680). Dr. Ravi also found that Plaintiff could never lift or carry more than 20 pounds, climb, balance, stoop, kneel, crouch, or crawl, and stated she should not take standard public transportation. (R. 686). Furthermore, Dr. Ravi opined that Plaintiff could only stand or walk up to three hours without interruption and could walk no more than four hours in an eight-hour workday. (R. 682).

          *v.*    *Dr. Sandra Juriga*

On March 3, 2015, state agency reviewing psychologist, Dr. Sandra Juriga, reviewed Plaintiff's records. (R. 113-17). Dr. Juriga assessed mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (R. 113). Plaintiff was moderately limited in understanding, remembering, and carrying out detailed instructions, and in sustaining attention and concentration for extended periods, as well as performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances. (R. 116). Dr. Juriga also found Plaintiff to be moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and moderately limited in responding to changes in the work setting, and in traveling in unfamiliar paces. (R. 117).

      *vi.*    *Dr. Aurelio Salon*

Plaintiff was evaluated by CE Dr. Aurelio Salon on May 4, 2017. (R. 556-65). During the internal medicine examination, Plaintiff reported arthritis, insomnia, nervousness, and tachycardia, and Dr. Salon noted that Plaintiff reported right knee and low back pain in 2015, as well as a fast heartbeat in 2013. (R. 556). Dr. Salon, based on the examination, found that there were, "no objective findings to support the fact that [Ms. Garcia] would be restricted in her ability to sit or stand or in her capacity to climb, push, pull, or carry heavy objects." (R. 558).

      *vii.*    *Dr. Todd Deneen*

CE Dr. Todd Deneen performed a psychiatric evaluation of Plaintiff on March 21, 2019. (R. 668-75). Dr. Deneen found that Plaintiff's affect was anxious, with a euthymic mood, and Plaintiff's attention and concentration were impaired, possibly due to attention deficits, or possibly due to suboptimal effort. (R. 669). Plaintiff was found to be able to count sufficiently but had difficulties with math calculations, and her recent and remote memory skills were impaired, possibly due to memory deficits, and possibly due to suboptimal effort. (R. 668-70). Dr. Deneen also reported that Plaintiff's cognitive functioning was below average. (R. 669). The results of the examination were consistent with psychiatric and cognitive problems, but by itself, did not appear significant enough to interfere with Plaintiff's ability to function on a daily basis. (R. 671). However, Dr. Deneen diagnosed Plaintiff with unspecified depressive disorder, unspecified anxiety disorder, rule out mild neurocognitive disorder, and chronic pain. (R. 671). Dr. Deneen assessed moderate limitations in understanding and remembering, and carrying out complex instruction, and recommended that Plaintiff continue medications and start individual therapy. (R. 671, 673).

B. <u>The ALJ's Decision on Appeal</u>

The ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 16). Particularly, at step one of his evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 30, 2014, her alleged disability onset date (R. 18). At step two, the ALJ found that Plaintiff had one severe impairment: major depressive disorder. (R. 18). The ALJ found that this severe impairment "significantly limit[s] the ability the claimant's ability to perform basic work activities as required by SSR 85-28," and that there was no residual impairment of Plaintiff's left thumb. (R. 18). Additionally, the ALJ found there was no severe impairment of Plaintiff's neck – but acknowledged Dr. Perez's diagnosis of cervicalgia – and no evidence of a medically determinable impairment of her knees or shoulders. (R. 18). The ALJ determined that Plaintiff's impairment did not meet the criteria of 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 18). In assessing the "paragraph B" criteria of Listing 12.04, the ALJ determined that Plaintiff had mild limitations in adapting, managing herself, and interacting with others; and mild to moderate limitations in understanding, remembering or applying information, and concentrating, persisting, or maintaining pace. (R. 18-19).

The ALJ found that Plaintiff had the residual functional capacity ("RFC") for medium work with the limitations to simple work at Specific Vocational Preparation ("SVP") level 1 or 2 and reasoning level 1 or 2, and that she can understand and apply simple information, make simple work-related decisions, and maintain attention and concentration for rote work. (R. 20). Based largely on the opinion of Dr. Salon, the ALJ found Plaintiff could perform her past relevant work as a poultry eviscerator, and, therefore, she was not disabled. (R. 20, 27).

III.  **ANALYSIS**

  A.  *Applicable Law*

To be awarded disability benefits, the SSA requires that one have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 416.905(a). An ALJ makes this determination through a five-step evaluation process, where the burden rests on the plaintiff for the first four steps and only after all four steps are satisfied does the burden then shift to the commissioner for the final step. 20 C.F.R. § 416.920.

First, an ALJ must determine that the plaintiff is not currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4). Second, an ALJ must find that the plaintiff's impairment is so severe that it limits her ability to perform basic work activities. (*Id*.). Third, an ALJ must evaluate whether the plaintiff's impairment falls under one of the Listings, such that she may be presumed to be disabled. Absent that, an ALJ must then determine the claimant's RFC, or her ability to perform physical and mental work activities on a sustained basis. (*Id*.). Fourth, an ALJ then evaluates if the plaintiff's RFC precludes her from meeting the physical and mental demands of her prior employment. (*Id*.). If the plaintiff has satisfied all four of these steps, the burden then shifts to the commissioner to prove that based on the plaintiff's RFC, age, education, and past work experience, the plaintiff is capable of performing some other work that exists in the national economy. (*Id*.).

The treating physician rule applies to claims, like this one, which are filed before March 27, 2017. 20 C.F.R. §§ 404.1527, 416.927.[1] Plaintiff's claim was filed on January 20, 2015. (R. 108). Accordingly, the treating physician rule applies to Plaintiff's claim. The treating physician rule requires an ALJ to weigh the opinions of a claimant's medical sources and give "controlling weight to a treating physician if those opinions [are] 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence in [the] case record.'" *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN)(KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (quoting 20 C.F.R. § 404.1527(d)(2)). Under this rule, consultative and non-examining physicians are afforded lesser weight than a treating physician who is understood to have a more intimate understanding of the claimant's medical background. The treating physician rule "states that the claimant's treating physician's diagnoses and findings regarding the degree of claimant's impairment are binding on the ALJ unless there is substantial evidence to the contrary." *Arzuaga v. Bowen*, 833 F.2d 424, 426 (2d Cir. 1987).

While an ALJ may decide to give less than controlling weight to a treating physician's opinion, if they do they must "comprehensively set forth [their] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In doing so, they must consider the factors listed under 20 C.F.R. §§ 404.1527(c)(2)(i), (ii) and 404.1527(c)(3)-(6), to determine how much weight to give to the opinion.

---

[1] For claims filed on or after March 27, 2017, ALJs apply the new regulations in 20 C.F.R. §§ 404.1520c and 416.920c in lieu of applying the treating physician rule. *See, e.g.*, *Acosta Cuevas v. Comm'r of Soc. Sec.*, 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, 20-CV-0502 (KMW) (KHP), 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).

20 C.F.R. § 404.1527(c)(2). The factors, as explained by the Second Circuit in *Burgess*, are the "length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quoting C.F.R. § 404.1527(d)(2)(i)-(ii), (3)-(5)) (internal quotations removed). The regulations specify that the Commissioner "will always give good reasons in [their] notice of determination or decision for the weight [they] give [claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). *See also Schaal v. Apfel*, 134 F.3d 496, 503-4 (2d Cir. 1998) (quoting 20 C.F.R. § 404.1527(c)(2)). The Court should "remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided good reasons for its weight assessment." *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (internal quotations removed).

Additionally, it is well-settled that an "ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."). "Where . . . an ALJ misreads a critical piece of evidence in the record and then relies on his error in reaching his opinion, the opinion cannot be said to be supported by 'substantial evidence.'" *Joseph v. Astrue*, No. 06-CV-1356 (RMB) (DCF), 2007 WL 5035942, at *1 (S.D.N.Y. Dec. 28, 2007), *report and recommendation adopted*, No. 06-CV-1356 (RMB) (DCF), 2008 WL 850158 (S.D.N.Y. Mar. 20,

2008). "In some cases where the ALJ bases his decision on a misinterpretation of the evidence, remand may be warranted to afford the ALJ with an opportunity to re-evaluate the plaintiff's claim in light of what the evidence actually reveals." *Id.*

### *B. The ALJ Improperly Discounted the Treating Physician's Medical Opinions*

The ALJ did not give controlling weight to the medical opinions of Plaintiff's treating physician, Dr. Perez, stating that he chose to "give these assessments very little weight," on the grounds that Dr. Perez, "cited multiple marked psychiatric limitations. He is not a psychiatrist. His treatment notes contradict his conclusions." (R. 27). While the ALJ states several apparent incidents of inconsistency (R. 27), he fails to acknowledge that, with every incident he cites, Dr. Perez still continually and consistently maintained that Plaintiff suffered from depression which gave cause for Plaintiff's limitations. (Stip. at 5-7). Dr. Perez evaluated and treated Plaintiff at least sixteen times over the course of 5 years, and formally assessed and reported that Plaintiff had multiple marked limitations. (R. 830-46). The assessments of Dr. Perez, under the applicable treating physician rule, must be given controlling weight unless there is, "substantial evidence to the contrary." *Arzuaga v. Bowen*, 833 F.2d 424, 426 (2d Cir. 1987).

Here, there is no substantial evidence to the contrary and the ALJ discounted the opinions of Plaintiff's treating physician for an improper reason, stating, invalidly, that Dr. Perez's medical notes were inconsistent and that, irrelevantly, Dr. Perez is not a psychiatrist. In making this blanket assessment, the ALJ failed to consider that he must not only consider the specialty of the treating physician, but also the frequency, length, nature, and extent of treatment. *See Martin v. Berryhill*, No. 17-CV-08640 (VSB) (SN), 2019 WL 1756434, at *4 (S.D.N.Y. Feb. 20, 2019), *R & R adopted*, No. 17-CV-8640 (VSB) (SN), 2019 WL 1755425 (S.D.N.Y.

Apr. 19, 2019) (remanding where the ALJ failed to discuss the nature and extent of the treating physician's relationship with the Plaintiff). The ALJ's explanation for failing to give the appropriate level of weight does not constitute "good reason" under the relevant factors, and remand is accordingly warranted. Here, the ALJ discounted the opinions of Plaintiff's treating physician for an improper reason as he failed to consider all the factors under 20 C.F.R. § 404.1527(c). *Rodriguez v. Colvin*, No. 15-CV- 297 (KPF), 2016 WL 1573464, at *13–15 (S.D.N.Y. Apr. 18, 2016).

Additionally, of the seven different physicians that evaluated and treated Plaintiff over the course of five years, Dr. Salon, who evaluated Plaintiff only once, was the only physician that did not agree that Plaintiff suffered from depression that causes limitations. Dr. Salon's opinion is assigned, inexplicably, substantial weight by the ALJ. (R. 27). The ALJ does little to explain why he chose to depart from the required treating physician rule when giving controlling weight to a physician that performed a one-time evaluation stating, "I assign Dr. Salon's opinion (Ex. 7F) substantial weight. While Dr. Salon performed a one-time evaluation, his examination of the claimant was normal, and his conclusion is consistent with the treatment evidence that shows that physical examination findings have consistently been within normal limits." (R. 27). Under the treating physician rule, Dr. Salon's opinion should have been given limited weight, but instead, the ALJ incorrectly gave his opinion substantial weight.

Upon a comprehensive review of the record, the ALJ did not fully address the record when characterizing the treating physician's medical opinions as inconsistent. Not only did the ALJ fail to articulate how these evaluations were actually inconsistent with the treating physician opinions, the ALJ did not address contemporaneous treatment notes in the same

record that supported the opinions of the treating physician. He also failed to thoroughly explain why he chose to give substantial weight to non-treating physician, Dr. Salon. Accordingly, the ALJ should have applied the treating physician rule and given controlling weight to Dr. Perez's medical opinions, and his failure to do so warrants remand.

## IV.  CONCLUSION

Accordingly, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, and the Commissioner's Motion for Judgment on the Pleadings is **DENIED.** The case is remanded for further administrative review under 42 U.S.C. § 405(g), including but not limited to a *de novo* hearing and a new decision.

Respectfully submitted,

_s/ Ona T. Wang_

Dated: March 24, 2023
New York, New York

**Ona T. Wang**
United States Magistrate Judge